Daniel Cooper (Bar No. 153576)
daniel@lawyersforcleanwater.com
Lawyers for Clean Water, Inc.
1004 O'Reilly Avenue
San Francisco, California 94129
Tel:    (415) 440-6520
Fax:    (415) 440-4155

Jason Weiner (Bar No. 259264)
jweiner.venturacoastkeeper@wishtoyo.org
Wishtoyo Foundation / Ventura Coastkeeper
3875-A Telegraph Road #423
Ventura, CA 93003
Tel: (805) 823-3301
Fax: (805) 258-5135
Attorneys for Plaintiffs

William W. Funderburk, Jr. (Bar No. 176244)
wfunderburk@candffirm.com
Anna L. Cole (Bar No. 258312)
acole@candffirm.com
Castellón & Funderburk LLP
811 Wilshire Boulevard, Suite 1025
Los Angeles, California 90017
Tel:    (213) 623-7515
Fax:    (213) 532-3984
Attorney for Defendants

**JS-6**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ventura Coastkeeper, a program of the Wishtoyo Foundation, and Wishtoyo Foundation, a non-profit corporation<br><br>             Plaintiffs,<br><br>         v.<br><br>Standard Industries, J.M.D.L., Inc. doing business as Standard Industries, MJL Investments LLC, Standard Demolition, Inc.,<br><br>           Defendants. | Case No. CV 10-04039-JFW (SHx)<br>Hon. John F. Walter<br><br>**CONSENT DECREE**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)** |

**WHEREAS,** Ventura Coastkeeper is a program of the Wishtoyo Foundation, a non-profit public benefit corporation.  Ventura Coastkeeper's mission is to protect, preserve, and restore the ecological integrity and water quality of Ventura County's inland water bodies, coastal waters and watersheds.  The Wishtoyo Foundation's mission is to preserve, protect and restore Chumash culture, the culture and history of the coastal communities, cultural resources and the environment;

**WHEREAS,** Ventura Coastkeeper and Wishtoyo Foundation are referred to herein as ("Coastkeeper" or "Plaintiff");

**WHEREAS,** Standard Industries, J.D.M.L. Inc. doing business as Standard Industries, and MJL Investments LLC are collectively referred to herein as "Defendants" or "Standard";

**WHEREAS,** Defendants are the owners and/or operators of the scrap metal recycling facility (SIC Code 5093) located at 1905 Lirio Avenue, Ventura, California 93004 ("Facility");

**WHEREAS,** Standard Demolition does not conduct and has never conducted activities at the Facility that are regulated by the California General Industrial Stormwater Permit, and Standard Demolition does not discharge and has never discharged storm water associated with industrial activity at the Facility;

**WHEREAS,** based on Standard Demolition's representation, Coastkeeper dismisses Standard Demolition with prejudice for claims alleged in Complaint through the Effective Date;

**WHEREAS,** on March 23, 2010, Coastkeeper served Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), with a notice of intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA").  The notice letter alleged violations of the Clean Water Act for Defendants' discharges of pollutants into receiving waters in violation of National Pollution Discharge Elimination System

("NPDES") General Permit No. CAS0000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Industrial Permit");

**WHEREAS**, on May 28, 2010, Coastkeeper filed a complaint against Defendants in the United States District Court, Central District of California (Civil Case No.  CV 10-04039-JFW (SHx)) entitled *Ventura Coastkeeper, et al. v. Standard Industries, et al.* ("Complaint");

**WHEREAS**, Defendants deny all allegations of the Complaint;

**WHEREAS**, Plaintiffs and Defendants (collectively referred to herein as the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.    The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.    Plaintiffs have standing to bring this action;

5.    The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent

1    Decree.

2    **I.    OBJECTIVES**

3          6.    It is the express purpose of the Parties entering into this Consent Decree to

4    further the objectives set forth in Section 101 *et seq*. of the CWA, 33 U.S.C. §§ 1251, *et*

5    *seq*., and to resolve those issues alleged by Coastkeeper in its Complaint.  In light of

6    these objectives and as set forth fully below, Defendants agree, *inter alia*, to comply with

7    the provisions of this Consent Decree and to comply with the requirements of the

8    Industrial Permit and all applicable provisions of the CWA.  Specifically, Receiving

9    Water Limitation C(2) in the Industrial Permit requires that the Facility "not cause or

10   contribute to the exceedance of an applicable water quality limit."  Effluent Limitation

11   B(3) of the Industrial Permit requires that Best Management Practices ("BMPs") be

12   developed and implemented to achieve Best Available Technology ("BAT") and the Best

13   Conventional Pollutant Control Technology ("BCT").  Defendants are required to

14   develop and implement BMPs necessary to comply with the Industrial Permit's

15   requirement to achieve compliance with Water Quality Standards and BAT/BCT

16   standards.  BMPs must be developed and implemented to prevent discharges or to reduce

17   contamination in storm water discharged from the Facility sufficient to achieve the

18   numeric limits detailed in Table 1 below.

19   **II.    COMMITMENTS OF THE PARTIES**

20        **A.    Industrial Storm Water Pollution Control Measures**

21          7.    Defendants shall implement the BMPs in the Storm Water Pollution

22   Prevention Plan ("SWPPP") and map attached hereto as Exhibit B by October 31, 2010.

23   Defendants shall implement the BMPs in order to comply with the provisions of this

24   Consent Decree and to comply with the requirements of the Industrial Permit and all

25   applicable provisions of the CWA at the Facility.  Included in the SWPPP are the

26   following BMPs: (1) diverting and infiltrating roof runoff; (2) consolidating discharge

27   points to maximize the amount of storm water runoff that is treated by the existing

28   treatment methods already in place at the Facility; (3) reducing the volume of offsite

1  discharges by applying stored runoff to existing on-site scrap piles; and (4) a new

2  sweeping protocol using a new sweeper, Model # Tenant S 30.  Defendants are not

3  limited to implementing only BMPs outlined in the SWPPP.  If the SWPPP does not

4  effectively prevent discharges or reduce contamination in storm water discharged from

5  the Facility in a manner sufficient to achieve the Numeric Limits detailed in paragraph

6  11, below, Defendants shall implement additional BMPs developed pursuant to this

7  Consent Decree.

8        8.      The storm water pollution control measures and contaminant mass reduction

9  plans required by this Consent Decree and the Industrial Permit shall be designed and

10  operated to manage through treatment and/or diversion at least 95% of the average annual

11  runoff volume ("Volume-Based Compliance Requirement").  The storm water pollution

12  control measures and contaminant mass reduction plans shall be operated throughout the

13  entire year.  The Volume-Based Compliance Requirement will be based on an assumed

14  runoff coefficient of 0.9 and the 20-year rainfall record from the Ventura County

15  Watershed Protection District rainfall gauge VC 175.  For the purpose of this Consent

16  Decree, properly documented discharges of storm water and/or storm water pollutants

17  from the Facility in connection with rainfall events that cause runoff volume to exceed

18  the Volume-Based Compliance Requirement is not a violation of this Consent Decree.

19  Any storm water discharge without treatment and/or diversion shall be documented in a

20  report that includes the quantity of water discharged and the reason for the discharge.

21  The report shall be created within fifteen (15) days of any such discharge and shall be

22  provided to Coastkeeper within three (3) days of its completion.

23        9.      As described in paragraphs 12 and 13 below, beginning with the 2010/2011

24  wet season, and for each year thereafter during the term of this Consent Decree, storm

25  water discharges from the Facility (except storm water discharges in a storm that causes

26  runoff volume to exceed the Volume-Based Compliance Requirement) shall require

27  Defendants to submit an Action Plan by June 30 of each year if the any pollutant

28  concentration in any such storm water discharge exceed any one of the Numeric Limits

set forth in Table 1 below.  Notwithstanding any other provision of this paragraph, no Action Plan will be required if the Defendants have demonstrated corresponding potential mass emission reductions described in paragraphs 14-15 for any parameter in Table 1.

10.     Non-stormwater discharges from the Facility not authorized by the Industrial Permit shall be considered a breach of this Consent Decree.

**C.     Reduction of Pollutants in Discharges**

11.     <u>Numeric Limits and Contaminant Reduction</u>.  Contaminants in discharges shall not exceed the limits ("Numeric Limits") in Table 1.[1]  The presence of any contaminant in any discharge from the Facility in excess of, or outside the range of, the Numeric Limits in Table 1 is a breach of this Consent Decree.

**Table 1**

| Contaminant | Limit<br>(All but pH expressed as mg/L; hardness dependent limits in bold) |
|---|---|
| Total Suspended Solids | 100 |
| Total Recoverable Copper | **0.0123** |
| Total Recoverable Lead | **0.069** |
| Total Recoverable Zinc | **0.110** |
| Oil and grease | 15 |
| Total Recoverable Aluminum | 0.750 |
| Dissolved Arsenic | **0.340** |
| Dissolved Cadmium | **0.0043** |
| Total Recoverable Iron | 1.0 |
| Total Recoverable Mercury | 0.0024 |
| Dissolved Nickel | **0.470** |
| Dissolved Silver | **0.0034** |
| Chemical oxygen demand | 120 |

[1] Several of the Numeric Limits are hardness dependent.  They are expressed in Table 1 using an assumed hardness of 100 mg/l $CaCO_3$.  Defendants have the option of either applying the limit with the assumed hardness of 100 mg/l $CaCO_3$ or collecting a sample in the receiving water at the point of discharge from, or immediately downstream of, the Facility during the same storm event that the discharge samples are collected, and adjusting the limit based on the hardness of this receiving water sample.

| Contaminant | Limit<br>(All but pH expressed as mg/L; hardness<br>dependent limits in bold) |
|---|---|
| pH | 6.5 to 8.5 units |

12.   <u>Action Plan for Table 1 Exceedances.</u>  Defendants shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") if any sampling for any parameter during the wet season demonstrates that any parameter in any discharge from the Facility exceed the applicable limit for any parameter found in Table 1.  In any year that an Action Plan is required, it shall be submitted by June 30 following the wet season.

a.   <u>Action Plan Requirements</u>. Any Action Plan submitted shall include at a minimum (1) the identification of the pollutant(s) discharged in excess of the Numeric Limit(s), (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented before October 1 of the year the Action Plan is submitted.  Anytime an Action Plan is submitted it shall also include a revised monitoring & reporting plan ("M&RP").  The Action Plan must address treating runoff discharging from the site.  The Action Plan may include a plan for reducing the potential mass emissions.

b.   <u>Action Plan Review</u>.  Coastkeeper shall have thirty (30) days upon receipt of Defendants' Action Plan to provide Defendants with comments.  Defendants shall have thirty (30) days from the date Coastkeeper comments on Defendants' Action Plan to implement any additional non-structural or structural BMPs agreed upon by Defendants and Coastkeeper.  Defendants shall provide a written explanation if Defendants refuse to develop and/or implement any of Coastkeeper's recommended additional BMPs.  If any structural BMPs require any agency approval, then Defendants shall contact Coastkeeper to request an extension of the deadline, if necessary, to implement the structural BMPs

requiring agency approval.  Coastkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.  Defendants shall notify Coastkeeper in writing when the Action Plan has been implemented.

13.    <u>Action Plan for Year 3 Wet Season</u>. If at the end of the 2011/2012 Wet Season, storm water sample results demonstrate that Defendants continue to discharge storm water containing pollutants exceeding the limits set forth in Table 1, the Parties shall meet and confer by June 30, 2012 to (1) discuss the sample results, (2) discuss current BMPs, and (3) devise a mutually agreeable action plan ("Year 3 Action Plan"). The Year 3 Action Plan shall include time schedule(s) for implementing any proposed BMPs, with all proposed BMPs to be implemented no later than October 1, 2012.  Within thirty (30) days of meeting and conferring, Defendants will develop and submit the Year 3 Action Plan to Coastkeeper.  Coastkeeper will provide comments on the Year 3 Action Plan within thirty (30) days of receipt of the plan.  Defendants shall revise the Year 3 Action Plan to include Coastkeeper's comments.

14.    <u>Mass Emission Reduction for Contaminants.</u>  If any sampling results from any Wet Season demonstrate discharges of storm water contain a concentration of any pollutant exceeding the Numeric Limits in Table 1, Defendants may demonstrate by June 30 following the wet season that the potential total mass emission of the contaminant has been reduced according to the requirements in Table 3 below through the elimination of exposure of stormwater to industrial activities and/or reductions of the volume of the runoff discharged from industrial activities.  If Defendants make this showing then no Action Plan will be required, and no violation of this Consent Decree for failing to comply with the Numeric Limits in Table 1 will be incurred.  Defendants must make a written demonstration to Coastkeeper, as set forth in paragraph 15 below ("Mass Emission Reduction Demonstration"), that the required potential total mass emissions reduction has been made.  Coastkeeper shall have thirty (30) days upon receipt of Defendants' Mass Emission Reduction Demonstration to review and accept or reject Defendants' Mass Emission Reduction Demonstration.  If Defendants' Mass Emission

Reduction Demonstration, as determined by Coastkeeper and Defendants or via Dispute Resolution set forth in Section IV of this Consent Decree, does not demonstrate that the potential total mass emission of the contaminant has been reduced according to the requirements in Table 3 below, Defendant must submit an Action Plan to Coastkeeper within thirty (30) days of such a determination.

15.     The baseline for mass emissions reductions calculations will be based on stormwater runoff samples collected by Defendants and Coastkeeper prior to treatment within each of the two collection sumps shown on Figure 2 of Standard's SWPPP ("untreated samples"). These untreated samples will be collected in accordance with the M&RP and will be analyzed for the constituents listed on Table 1. The untreated samples from each sump will be analyzed discretely and the results will be composited based on relative tributary area to establish a tributary area weighted average for each sampled storm event. The baseline for the mass emission reductions calculations will be the geometric mean of all the untreated sample results collected during the first and second wet seasons under this Consent Agreement. The baseline for the first year will be based on the geometric mean of all the available pre-treatment samples for that year and after the second wet season, a revised baseline will be calculated using the additional untreated samples collected during the second wet season along with the first year untreated sample results.

The demonstration that the potential total mass emission of a contaminant has been reduced shall be made each wet season as follows:

a.  Determine the site surface area discharging storm water associated with industrial activity before and after this Effective Date. The surface area discharging storm water associated with industrial activity after the Effective Date will be an "effective" surface area adjusted to account for any runoff that is prevented through spray irrigation, discharges to the POTW, or other means employed by Standard to reduce or eliminate storm water discharges.

b.  Multiply the baseline values and site surface area discharging storm water

associated with industrial activity before and after this Effective Date to obtain indicators of potential mass emission before and after this Effective Date; and

   c. Show that the potential mass emission of the contaminant has decreased by the amount(s) specified in Table 2:

**Table 2: Mass Emission Decrease Requirements**

| If the concentration exceeds the Numeric Limit by: | Then the potential total mass emission shall be reduced by: |
|---|---|
| 1-100% (i.e., up to 2 times the limit) | 50% |
| 101-200% (i.e., up to 3 times the limit) | 75% |
| Greater than 200% (i.e., more than 4 times the limit) | 95% |

### C. Sampling, Monitoring, Inspecting, and Reporting

  16. <u>Sampling Program.</u> Within thirty (30) days of the Effective Date, Defendants shall implement their M&RP for the Facility (attached hereto as Exhibit C), as well as conduct all sampling and monitoring required by this Consent Decree and/or the Industrial Permit.

  17. <u>Coastkeeper's Review of Revised M&RP.</u> If, after the Effective Date, Defendants anticipate any changes in the Facility's storm water discharge point(s), or either Defendants or Coastkeeper discover a change in the Facility's storm water discharge point(s), Defendants shall submit a revised M&RP to Coastkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days prior of the creation or discovery of the new discharge point.  Coastkeeper shall provide comments, if any, to the Defendants within thirty (30) days of receipt of the M&RP. Defendants shall incorporate Plaintiffs' comments into the M&RP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

18.   <u>Sample Analysis and Sample Frequency</u>.  Defendants shall collect storm water samples from each discharge location from five (5) storm events per Wet Season (defined as October 1- May 31).  Any storm water discharge occurring between 7 a.m. and 4:30 p.m. Monday through Friday (excluding holidays), between 8 a.m. and 12 p.m. Saturday (excluding holidays), or whenever storm water is intentionally released outside these hours shall be sampled.  Defendants must sample their storm water discharge(s) from each of the first five (5) storm events that produce a discharge in each Wet Season. Any failure to sample in one of the first five (5) storm events that produce a storm water discharge shall be documented.  Defendants must continue to sample their storm water discharges from each storm event that produces a discharge until a total of five (5) storm events that produce a discharge have been sampled.

19.   Defendants shall analyze the samples for the constituents identified in Table 1.  A California State certified laboratory shall perform all sample chemical analyses. Defendants shall select laboratories and analytical limits such that, at a minimum, the method detection limits shall be below the Numeric Limits in Table 1.

**D.   Storm Water Pollution Prevention Plan**

20.   <u>SWPPP</u>.  Within thirty (30) days of the Effective Date, Defendants agree to implement the SWPPP currently in effect at the Facility (attached as Exhibit B) to incorporate all storm water pollution prevention measures and other requirements set forth in this Consent Decree and/or the Industrial Permit.

21.   <u>SWPPP Revisions</u>.  Defendants shall revise the SWPPP as necessary to incorporate additional BMPs developed pursuant to this Consent Decree.  Specifically, the SWPPP shall include a description of all industrial activities and corresponding potential pollutant sources and, for each potential pollutant source, a description of the potential pollutants from the sources.

22.   <u>Coastkeeper's Review of Revised SWPPP</u>.  If Defendants revise the SWPPP, they shall submit the revised SWPPP to Coastkeeper for review and comment as soon as it is completed but in any event no later than thirty (30) days from the date of

1    revision.  Within thirty (30) days of Coastkeeper's receipt of the revised SWPPP,

2    Coastkeeper shall provide Defendants with comments and suggestions, if any, concerning

3    the revisions to the SWPPP.  Within thirty (30) days of Defendants' receipt of

4    Coastkeeper's comments on the revised SWPPP and if Defendants agree with

5    Coastkeeper's comments, Defendants shall incorporate Coastkeeper's comments into the

6    SWPPP and the SWPPP will be re-issued.  Any disputes as to the adequacy of the

7    SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent

8    Decree, set out in Section IV below.

9         **E.**    **Employee Training**

10       23.    Within thirty (30) days of the Effective Date, Defendants shall develop a

11   training program, including any training materials needed for effective implementation of

12   the training program, to ensure that employees are properly trained to perform the

13   activities described below.  Such training program shall be specified in the SWPPP.

14   Training shall be provided by a private consultant or a representative of Defendants

15   familiar with the requirements of this Consent Decree and the Industrial Permit, and shall

16   be repeated as necessary to ensure that all such employees are familiar with the

17   requirements of this Consent Decree, the Industrial Permit, and the Facility's SWPPP.

18   All new staff will receive this training before assuming responsibilities for implementing

19   the SWPPP.  Defendants shall maintain training records to document compliance with

20   this paragraph, and shall provide Coastkeeper with a copy of these records within

21   fourteen (14) days of receipt of a written request.  Specific training shall include, but is

22   not limited to:

23         a.   <u>Non-Storm Water Discharge Training.</u>  Defendants shall train all

24   employees on the Industrial Permit's prohibition of non-storm water discharges so that

25   employees know what non-storm water discharges are and how to avoid them;

26         b.   <u>BMP Training.</u>  Defendants shall train all employees responsible for BMP

27   implementation and maintenance on the proper implementation and maintenance of the

28   BMPs developed and implemented at the Facility;

c.  <u>Sampling Training</u>.  Defendants shall train all individuals performing sampling at the Facility pursuant to this Consent Decree or the Industrial Permit on the proper sampling protocols;

d.  <u>Visual Observation Training.</u>  Defendants shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree or the Industrial Permit.

**F.    Compliance Monitoring**

24.  <u>Site Inspections.</u>  Up to two representatives of Coastkeeper, and if Coastkeeper desires an attorney or other representative, may conduct one yearly site inspection ("Site Inspection") at the Facility for each year that this Consent Decree is in effect.  The annual Site Inspection shall occur during normal business hours and Coastkeeper shall provide Defendants' with as much notice as possible, but at least twenty-four (24) hours notice prior to a Site Inspection during wet weather, and seventy-two (72) hours notice prior to a Site Inspection during dry weather.  Notice will be provided by phone and electronic mail.  During the annual Site Inspection, Defendants shall allow Coastkeeper and/or its representatives access to the Facility's SWPPP and monitoring records, and to all monitoring reports and data for the Facility.  During the annual Site Inspection, Defendants shall allow Coastkeeper and/or its representatives to collect samples of storm water discharges at the Facility.

25.  <u>Sampling Inspections</u>.  Upon twenty-four (24) hours notice, Defendants shall grant Coastkeeper personnel access to the Facility up to two (2) times per Wet Season that this Consent Decree is in effect for the purpose of collecting samples of storm water discharges and/or untreated samples (as described in the baseline monitoring protocol in the Facility's M&RP) at the Facility.

26.  <u>Reporting</u>.  After the Effective Date, Defendants shall provide Coastkeeper with a copy of all compliance and monitoring data, including inspection reports, related to the Facility on a monthly basis.  Defendants shall provide Coastkeeper with all laboratory analyses related to the Facility within seven (7) days of Defendants' receipt of

such information.

27.    <u>Document Provision</u>.  After the Effective Date, Defendants shall copy Coastkeeper on all documents and communications related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any State or local agency or municipality.  Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies and/or municipalities. Any correspondence related to water quality received by Defendants from any regulatory agency shall be provided within three (3) business days of receipt by Defendants.

**G.    Environmental Projects, Compliance Monitoring Funding and Fees and Costs**

28.    <u>Environmental Project</u>.  Defendants agree make a payment of Eighty-Nine Thousand Dollars ($89,000) to California State University Channel Islands for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological effects of storm water and wastewater discharges into the Santa Clara River and its Estuary as outlined in Exhibit A.  Defendants shall make the mitigation payment in two installments as follows: a payment of Seventy Thousand Dollars ($70,000) within thirty (30) days of the Effective Date, and a second payment of Nineteen Thousand Dollars ($19,000) within one hundred (100) days of the Effective Date.  All payments required under this paragraph shall be made to "California State University Channel Islands," and mailed via certified mail or overnight delivery to California State University Channel Islands, attention: Bonnie Lanthier, One University Drive, Camarillo, CA 93012.  Defendants shall provide Coastkeeper with a copy of such payment.

29.    <u>Coastkeeper's Fees and Costs</u>.  Defendants agree to partially reimburse Coastkeeper for their investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter totaling Eighty-Five Thousands Dollars ($85,000).  Defendants shall pay this amount in twelve (12) monthly installments of Seven Thousand Eighty Three Dollars and Thirty-Three Cents ($7,083.33).  The first

1  payment shall be due on the fourteenth (14th) day following the Effective Date.

2  Subsequent payments shall be due every thirty (30) days until the remaining eleven (11)

3  payments have been made.  All such payments shall be made payable to "Lawyers for

4  Clean Water Attorney-Client Trust Account" and delivered by certified mail or overnight

5  delivery to:  Lawyers for Clean Water, Inc., 1004 A O'Reilly Avenue, San Francisco,

6  California 94129.

7       30.    Coastkeeper Compliance Monitoring. Defendants agree to compensate

8  Coastkeeper for time to be spent by legal staff or technical consultants monitoring

9  Defendants' compliance with the Consent Decree.  To this end, the Defendants shall pay

10 Coastkeeper the sum of Eighteen Thousand Dollars ($18,000) within thirty (30) days of

11 the Effective Date of this Consent Decree.  Anytime Defendants are required to submit an

12 Action Plan and/or a Mass Emission Reduction Demonstration to Coastkeeper,

13 Defendants shall make an additional compliance monitoring payment in the amount of

14 Ten Thousand Dollars ($10,000) upon submission of the Action Plan or Mass Emission

15 Reduction Demonstration.  All payments required under this paragraph shall be made

16 payable to "Ventura Coastkeeper," addressed to Ventura Coastkeeper, 3875-A Telegraph

17 Road #423, Ventura ,CA 93003, and sent via courier or overnight delivery.

18      31.    Stipulated Payment.  Defendants shall make a remediation payment of One

19 Thousand Dollars ($1,000) for each missed deadline included in this Consent Decree.

20 Payments for a missed deadline shall be made for the restoration and/or improvement of

21 the watershed in the area affected by Defendants' discharges and shall be awarded to

22 California State University Channel Islands, and mailed via certified mail or overnight

23 delivery to California State Channel Islands University, attention: Bonnie Lanthier, One

24 University Drive, Camarillo, CA 93012.  Defendants agree to make the stipulated

25 payment within thirty (30) days of a missed deadline and make the payment via overnight

26 delivery or by certified mail.  Defendants shall provide Coastkeeper with a copy of each

27 such payment at the time it is made.

28      32.    Interest Payments. In the event of late payment of any of the sums due

referred to in this Section H, the Defendant shall pay 3% interest to Coastkeeper, which shall accrue daily from the fifth day past the date the sum was due until the date the Defendant tenders payment.

### H.   Commitments of Plaintiff

33.   Plaintiff shall submit this Consent Decree to the United States Environmental Protection Agency and the United States Department of Justice ("DOJ") within three (3) days of the final signature of the Parties for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt the agencies or the certified return receipts, copies of which shall be provided to Defendants if requested.  In the event that EPA or DOJ object to entry of this Consent Decree the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## III.   EFFECTIVE DATE AND TERMINATION DATE

34.   The term "Effective Date," as used in this Consent Decree, shall mean the last date for the United States Department of Justice and the United States Environmental Protection Agency ("Federal Agencies") to comment on the Consent Decree, i.e., the 45th day following the United States Department of Justice and United States Environmental Protection Agency's receipt of the Consent Decree, or the date on which the Federal Agencies provide notice that they require no further review and the Court enters the final Consent Decree, whichever occurs earlier.

35.   This Consent Decree will terminate on its own terms five (5) years from the Effective Date.

## IV.   DISPUTE RESOLUTION

36.   This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

37.   Meet and Confer.  A party to this Consent Decree shall invoke the dispute

resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than fourteen (14) calendar days from the date of the notice.

38.     If the Parties cannot resolve a dispute by the end of the meet and confer process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

39.     If Coastkeeper initiates a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, Coastkeeper shall be entitled to recover reasonable fees and costs incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §§ 1365, 1319.

## V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.     In consideration of the above, upon the Effective Date of this Consent Decree, the Parties hereby fully release, except for claims for the Defendants' failure to comply with this Consent Decree and as expressly provided below, each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged CWA violations claimed in the Complaint, up to and including the Effective Date of this Consent Decree.

41.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, or any other judicial or administrative body on any other matter relating to Defendants.

42.     Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any

1 alleged violations that may be raised in the future.

2    43.    Force Majeure. Defendants shall notify Coastkeeper pursuant to the terms of

3 this paragraph, when timely implementation of the requirements set forth in this Consent

4 Decree becomes impossible, despite the timely good-faith efforts of Defendants, due to

5 circumstances beyond the reasonable control of Defendants or its agents, and which

6 could not have been reasonably foreseen and prevented by the exercise of due diligence

7 by Defendants.  In no circumstances shall a claim of inability to pay be considered Force

8 Majeure.

9    a.  If Defendants claim impossibility, they shall notify Coastkeeper in writing

10 within twenty-one (21) days of the date that Defendants first knew of the event or

11 circumstance that caused or would cause a violation of this Consent Decree.  The notice

12 shall describe the reason for the nonperformance and specifically refer to this Section.  It

13 shall describe the anticipated length of time the delay may persist, the cause or causes of

14 the delay, the measures taken or to be taken by Defendants to prevent or minimize the

15 delay, the schedule by which the measures will be implemented, and the anticipated date

16 of compliance. Defendants shall adopt all reasonable measures to avoid and minimize

17 such delays.

18    b.  The Parties shall meet and confer in good-faith concerning the non-

19 performance and, where the Parties concur that performance was or is impossible, despite

20 the timely good faith efforts of Defendants, due to circumstances beyond the control of

21 Defendants that could not have been reasonably foreseen and prevented by the exercise

22 of due diligence by Defendants, new deadlines shall be established.

23    c.  If Coastkeeper disagrees with Defendants' notice, or in the event that the

24 Parties cannot timely agree on the terms of new performance deadlines or requirements,

25 either party shall have the right to invoke the Dispute Resolution Procedure pursuant to

26 Section IV.  In such proceeding, Defendants shall bear the burden of proving that any

27 delay in performance of any requirement of this Consent Decree was caused or will be

28 caused by force majeure and the extent of any delay attributable to such circumstances.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PAGE INTENTIONALLY LEFT BLANK**

# VI.     MISCELLANEOUS PROVISIONS

44.     <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial Permit, the Clean Water Act, or specifically herein.

45.     <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

46.     <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

47.     <u>Correspondence</u>.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular mail and electronic mail as follows:

If to Plaintiff:

Daniel Cooper
Drevet Hunt
Lawyers for Clean Water
1004 A O'Reilly Ave
San Francisco, CA 94129
daniel@lawyersforcleanwater.com

With copies to:

Jason Weiner
Staff Attorney
Wishtoyo Foundation / Ventura Coastkeeper
3875-A Telegraph Road #423
Ventura, CA 93003
jweiner.venturacoastkeeper@wishtoyo.org

If to Defendant:

William W. Funderburk, Jr.
Anna L. Cole
Castellon & FunderburkLLP

811 Wilshire Blvd. Suite 1025
Los Angeles, CA 90017
wfunderburk@candffirm.com
acole@candffirm.com

With copies to:

Michelle Scheck
Standard Industries
1905 Lirio Avenue
Ventura, CA 93004
michelle@standard1.com
(805) 643-6669

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

48.   <u>Effect of Consent Decree</u>.  Plaintiffs do not, by its consent to this Consent Decree, warrant or aver in any manner that the Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

49.   <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

50.   <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

51.   <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

52.     <u>Integration Clause</u>.  This is an integrated Consent Decree.  This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

53.     <u>Authority</u>.  The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

54.     The provisions of this Consent Decree apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

55.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, the Defendants do not admit liability for any purpose as to any allegation or matter arising out of this Action.

The undersigned representatives for Coastkeeper and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree and that this Consent Decree binds that party.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth above.

**IT IS SO ORDERED:**

Date:   December 14, 2010

_____
Honorable John F. Walter
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

APPROVED AS TO CONTENT

VENTURA COASTKEEPER AND
WISHTOYO FOUNDATION

Dated:        October _____, 2010        _____

Mati Waiya, Executive Director
Ventura Coastkeeper and
Wishtoyo Foundation


STANDARD INDUSTRIES

Dated:        October _____, 2010        _____

Michelle Scheck, Owner
Standard Industries

J.D.M.L. Inc. dba STANDARD
INDUSTRIES

Dated:        October _____, 2010        _____

Michelle Scheck
J.D.M.L. Inc. dba Standard Industries


MJL INVESTMENTS LLC

Dated:        October _____, 2010        _____

Michelle Scheck
MJL Investments LLC

STANDARD DEMOLITION

Dated:        October _____, 2010        _____

Michelle Scheck
Standard Demolition

CASTELLON & FUNDERBURK LLP

1

2

Dated:       October _____, 2010        _____

3                                        William W. Funderburk, Jr.

4                                        Attorney for Defendants

5                                        LAWYERS FOR CLEAN WATER, INC.

6

7

8    Dated:       October _____, 2010        _____

9                                        Daniel Cooper

                                         Lawyers for Clean Water, Inc.

10                                       Attorney for Plaintiffs

11                                       WISHTOYO FOUNDATION AND

12                                       VENTURA COASTKEEPER

13

14   Dated:       October _____, 2010        _____

15                                       Jason Weiner

                                         Staff Attorney for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

# Exhibit A: Environmental Project

4

5

## California State University Channel Islands and University of California, Los Angeles Santa Clara River/Estuary Steelhead Water Quality Study

6

7

8

9

10

11

12

13

14

This project will be conducted and administered by California State University Channel Islands ("CSUCI") and its researchers and University of California, Los Angeles ("UCLA") and its researchers.  This project will attempt to characterize and analyze the affect of storm water and wastewater ("wastewater") discharges into the Santa Clara River and its Estuary upon the potential and current Santa Clara River Estuary habitat for juvenile and adult Southern California Steelhead. The project will include wastewater and estuary sampling[2] and analysis, at the minimum for toxicity[3] and emerging contaminants[4] in water, sediment, and or macroinvertebrates, and may also include analysis for total and dissolved metals and other constituents.

15

16

17

18

19

20

21

The project will begin thirty days from the effective date of this consent decree, ending no later than one year after the effective date of this consent decree. The primary researcher from CSUCI is Dr. Sean Anderson. The primary researcher from UCLA is Dr. Richard Ambrose. The project deliverable is a report that includes raw contaminant and toxicity data, analyses of that data which interprets the likely toxicity of any potential contaminants, and an overview of what this data suggests for juvenile and adult Southern California Steelhead residing in or passing through this estuary.

22

23

24

25

26

27

28

[2] A minimum of two sampling events, utilizing composite samples where appropriate for water analysis
[3] Toxicity analysis would be conducted using USEPA approved methods and species, and at the minimum will include freshwater acute bioassays for adult fathead minnow, rainbow trout, juvenile fathead minnow, and water flea; and chronic freshwater bioassays for juvenile fathead minnow and water flea.
[4] The emerging contaminants suite would at the minimum include: Phthalates (fabric softeners), and PPCPs (Pharmaceutical and Personal Health Care Products). PPCPs include: pharmaceuticals, synthetic fragrances, deodorants, detergents, disinfectants, plasticizers, preservatives, sunscreen, insect repellent, caffeine.